(91 App. Div. 30.)

VOOTH v. McEACHEN.

(Supreme Court, Appellate Division, First Department. February 5, 1904.)

1. ATTORNEY AND CLIENT—CLAIMS—SETTLEMENT—BREACH OF DUTY—LIABILITY OF ATTORNEY—FINDINGS—CONFLICTING EVIDENCE—APPEAL.

In an action against an attorney for alleged breach of duty in settling a claim for $840.66 placed in his hands for collection by plaintiff, the latter testified that, shortly after an action was brought on the claim, plaintiff's creditor served a third-party order on the person sued, whereupon defendant advised plaintiff to drop his action; that thereafter, and after defendant had already settled the claim for $250, he induced plaintiff to sign certain blank papers, on the misrepresentation that these papers were necessary for defendant's use on the trial of the action, which he afterwards filled up with a contract of retainer providing for a 50 per cent. contingent fee, and giving him authority, in his discretion, to settle the claim, and a general release and assignment of the claim. Plaintiff was corroborated as to the signing of the papers in blank, but defendant testified that the papers were fully written up before they were signed, and in this he was corroborated by his managing clerk, but the latter's testimony as to the time of his signing the same as a witness was untrue. *Held*, that a verdict in favor of plaintiff was not so unsupported by the evidence as to require a reversal on appeal.

2. SAME—NATURE OF ACTION—DEMAND.

Where plaintiff sued his former attorney for alleged misconduct in the settlement of a claim of $840.66 for $250, of which the attorney paid $125 to a judgment creditor of the plaintiff on a third-party order, and retained the balance for his fees, the action was not for conversion, but for a breach of the attorney's duty to plaintiff, so that no demand was necessary before suit brought.

3. SAME—DAMAGES—EXCESSIVENESS.

   Where plaintiff sued his former attorney for breach of duty in settling
   a claim of $840.66 for $250, and it appeared that only half of the claim
   was collectible, a verdict in favor of plaintiff for $211.16, which made an
   allowance to defendant for his services, was not excessive.

   Laughlin, J., dissenting.

Appeal from Special Term, New York County.

Action by Henry W. Vooth against James C. McEachen. From a
judgment in favor of plaintiff, and from an order denying defendant's
motion for a new trial, he appeals. Affirmed.

Argued before VAN BRUNT, P. J., and McLAUGHLIN,
O'BRIEN, INGRAHAM, and LAUGHLIN, JJ.

Abram I. Elkus, for appellant.
Charles G. F. Wahle, for respondent.

O'BRIEN, J. The action was brought to recover damages against
the defendant for breach of duty in settling certain claims which the
plaintiff had placed in his hands as attorney for enforcement. The
plaintiff was a brother of Herman C. Vooth, deceased, and alleged that
he was employed by his brother in his lifetime. After his death the
plaintiff claimed that he had an account against his brother's estate for
money loaned, labor performed, and moneys advanced to said Herman
C. Vooth, deceased, amounting to $840.66. He employed the defend-
ant as an attorney to enforce the payment of the claim, and after its
presentation to the administratrix of the deceased, and rejection by her,
the defendant, at the instigation of the plaintiff, brought suit in Sep-
tember, 1891, against the administratrix. Prior to April, 1892, a credit-
or of the plaintiff, named Streit, brought an action against the plaintiff,
and obtained and served a third-party order on the administratrix,
which order enjoined the administratrix from disposing of or paying
over to plaintiff any money or property until the further order of the
court. In May, 1892, plaintiff testified, he saw the defendant, who
advised him to drop his action against the administratrix, for the reason
that it would be a long while before the case was tried, and that the
estate of his brother would not, in any event, be able to pay more than
50 per cent. on the dollar on any claims, and that, in view of the third-
party order which had been obtained by one of his creditors, he thought
it would be better for him to accept the sum of $250, which he told
him he had been offered in settlement of the action. Prior to May 21,
1892, and on or about April 7, 1892, the defendant had settled the
action brought by the plaintiff against the administratrix for the sum
of $250, of which sum $125 was paid to the attorneys for the judgment
creditors of the plaintiff, and the balance was retained by the defend-
ant for his services in the action, pursuant to what he claimed was an
agreement of retainer providing for a 50 per cent. contingent fee, and
giving him authority, in his discretion, to settle the claim in suit; and
upon this agreement the defendant relied upon the trial. In addition
to this retainer agreement, the defendant produced at the trial a gen-
eral release and an assignment of the claim, both of which were signed
by the plaintiff on or about their date, which was April 7, 1892. With
respect to these papers, the plaintiff said that on or about the 6th or 7th

of April, 1892, the defendant asked him to sign some papers in blank, which he stated were necessary for use upon the trial of his action, and that the defendant's three exhibits in writing were the three papers which he signed in blank, relying upon the representations made as to the purpose for which they were to be used, and he did not know, nor was he told, that they were intended to be filled out so as to embody an authorization to settle or release or assign the claim. The defendant testified that the retainer and authorization was a written and completed document, which the plaintiff executed when he retained him, in April, 1891, which is the date written in the agreement. The other two papers bear date as of April 7, 1892.

The plaintiff was, in part, corroborated by a witness named Leander, who testified that he went with the plaintiff to the defendant's office, and while there the plaintiff, after talking with the lawyer about papers, showed them to the witness, and said:

" 'I have got to sign some papers.' * * * I says, 'To what?' He says, 'To these blank papers.' * * * He says, '* * * Will I sign these papers?' 'Well,' I says, 'they are blank. There is nothing to them.' And with that his lawyer said, 'If you cannot trust your lawyer, who are you going to trust?' I said, 'You can sign your name * * * if you want to.' There was nothing on the papers. One was a sort of bluish paper. The other was on legal cap, they generally draw up. There was nothing on either one of them. When they were handed to me. There was printing on one. A regular form. And the other was a blank paper, to my knowledge. He signed those papers in that condition in my presence. * * * He said [the defendant], 'I must have these papers to settle up the case.' "

The defendant, in his contention, was supported by the testimony of his former managing clerk—a man by the name of Booth, who signed the retainer agreement as a witness—and by the certificate of a notary named Norton, who is dead, and who took the acknowledgment of the release. The assignment of the claim produced in evidence, which was acknowledged before the defendant as commissioner of deeds, is entitled to little greater weight than the defendant's verbal testimony.

This summary of the issues, and of the testimony presented on either side to support them, together with excerpts from such part of the testimony as we deem most material, shows, we think, that the questions of fact were properly submitted to the jury for their verdict. The amount awarded the plaintiff, of $211.16, with interest, was not, in view of the testimony given, excessive damages to award, if the plaintiff were entitled at all to recover. The principal contention upon this appeal is that the verdict was against the weight of evidence. Upon this contention, were it not for the natural concern which the court is bound to take in all differences between attorney and client, we would not feel warranted in more than stating the conclusion from the summary already made. This concern, therefore, must be our excuse for extending an opinion in a case where so small an amount is involved.

We have already referred to the variance which exists between the testimony of the plaintiff and the defendant upon the main issue presented, as to whether or not the latter, in disregard of the plaintiff's express instructions, settled his claim and cause of action for $250. In considering the contention that the defendant, by a clear preponderance of evidence, established that the plaintiff knowingly assented to

the settlement, the jury had a right to observe that, as the result of the settlement as made, the plaintiff derived from it no direct pecuniary benefit; the amount received being divided equally between the defendant and the creditor, Streit. Recognizing the weight that might be attached to this circumstance, the defendant sought to meet it by his testimony that the plaintiff, having concluded that he would reap little benefit from the claim, told the defendant that he could do as he pleased with it, as he was going to leave the country for South America. This testimony the plaintiff denies. The jury might also consider the testimony that, at the time these papers were signed, the defendant, by telephone, arranged the terms thereof with the attorney for the administratrix, and that plaintiff was then present, which testimony the plaintiff denied; and although, by his manner of denial, he placed in doubt the question of whether there was or was not a telephone at that time in defendant's office, the latter made no effort to have this doubt solved in his favor by competent evidence.

That the parties met at the defendant's office either on or about April 7, 1892, as testified by the defendant, or on or about May 21, 1892, as testified by the plaintiff, is admitted. And as to what then occurred, according to the two versions, we have already indicated; and, as to corroboration outside of the written instruments, we have the testimony of Leander, for the plaintiff, as against that of the witness Booth, for the defendant. Were it not, therefore, for the written instruments, we do not think it would be seriously contended that a verdict either way would be against the weight of evidence; the testimony upon the disputed fact being so evenly balanced. It is insisted, however, that the written instruments are overwhelmingly in support of the defendant's version, and, to a great extent, our conclusion must turn upon the faith and credence to be given to them.

In regard to the agreement of retainer, the defendant testified that it was a completed instrument when it was presented to and signed by plaintiff, and that this occurred when he was first retained, in April, 1891, which, as stated, was the date written in that agreement. Booth, whose name appears as the witness to that agreement, swore to the same effect. On cross-examination, however, the latter admitted that he was not in the defendant's office in 1891 at all, but said he was there from the 1st of February to the 1st of May in the year 1892, and therefore he did not sign the paper at the time it bears date, which was 1891, and that the defendant, when he said it was witnessed by him in 1891, if he so stated, was mistaken. This is a serious discrepancy, because, if Booth is to be believed, and the retainer agreement was witnessed by him in 1892, although the date written in it was 1891, then the defendant was mistaken in his testimony that it was executed in 1891. We must, with respect to this paper, therefore, whether we decide that before it was executed it was filled out in full, or presented to the plaintiff in blank, conclude, with the plaintiff, that it was executed at or about the date of the other two papers. Upon the question of whether all these were signed in blank, or were all completed when they were signed by the plaintiff, we should incline to the view that the defendant was supported in his contention that the former was the fact. This is important as bearing upon the credibility of the plaintiff, but

it is by no means conclusive upon the real issue presented, which was not whether the plaintiff had signed the papers in blank or when fully completed—for it was admitted by plaintiff that the papers bore his signature, and he acknowledged the fact before a notary and defendant as commissioner of deeds—but whether the defendant induced the plaintiff to sign them by misrepresenting their intent, purpose, provisions, and bearing, and thus succeeded in obtaining a ratification of a settlement which he had already made in April. From the fact that one of these papers was acknowledged before a notary, and the additional fact appearing that the agreement of retainer was signed in the middle of the page, we should conclude that one, and maybe all, of the three written papers were in their present condition when signed by the plaintiff. As we have endeavored to point out, however, this is not conclusive upon the plaintiff's rights, although it might injuriously affect his credibility. The jury, as stated, were called upon finally to decide the crucial question of whether or not the plaintiff knowingly assented to the settlement, or whether, in violation of his instructions, the defendant settled it, and then, by misrepresentation, induced plaintiff to sign papers necessary to carry it out. The plaintiff did not deny his signature to the papers, but insisted that they were obtained as the result of the misrepresentations by the defendant of the use which would be made of them, and the purpose for which they were intended. The request to charge, therefore, upon which the appellant so confidently relies—that if the jury reach the conclusion that the papers, when executed by the plaintiff, were in the same condition as when presented upon the trial, then they must give a verdict for the defendant—was properly refused, because, as we have attempted to show, this was not conclusive upon the rights of the parties.

We have sufficiently discussed the evidence to show, we think, that, notwithstanding the written instruments, there was still a question for the jury. It frequently happens that, taking the printed record on appeal to this court, upon closely contested and nicely divided questions of fact, whichever way the jury determine the disputed facts, we would be obliged to affirm their verdict. This is but saying—what has been frequently repeated—that disputed questions of fact are for the jury, and it is only where the trial court, or this court upon a review of all the facts, concludes that the verdict is against the weight of the evidence, that it has the right to interfere. The learned trial judge in this case enjoyed the advantage—which the mere examination of this record does not furnish—of seeing the witnesses, and noting their demeanor and manner of testifying, which was a benefit that the jury also had, and which rarely, if ever, can be exactly written into, or photographed upon, a printed record. Upon the whole case, therefore, we do not think that we would be warranted in interfering with the jury's verdict, and, unless the errors assigned are sustained, the judgment entered thereon must be affirmed.

Among the other alleged errors, our attention is called to the refusal of the learned trial judge to dismiss the complaint; the defendant's insistence being that this action, in form, was one for conversion, and plaintiff cannot succeed, because no demand was made before suit, and there was no proof of damage. In our view, the cause of action is

one to recover damages for breach of duty which the defendant, as an attorney, owed to the plaintiff. And while, in such an action, no demand before suit was necessary, it was undoubtedly incumbent upon the plaintiff to have some basis upon which the resulting damage could stand. As between attorney and client, the presumption would be that the claim was valid, and it became the defendant's duty, upon that theory, to insist upon its payment for the full amount. We think, therefore, the respondent was right in insisting that the measure of such damages is the amount of the claim of the client which the attorney was employed to prosecute, and which the client presumably lost by reason of the breach of the attorney's duty. In defense, it would be proper to show that plaintiff had no claim, or, as was here shown, that, though valid, but 50 per cent. could be recovered thereon. We need not, however, dwell longer on this feature of the case, because the original amount of the claim was $840.66, and, the verdict being for $211.16, it is evident that the jury considered the testimony tending to show that only one-half of the amount was collectible, and made some allowance for the value of defendant's professional services. As said, therefore, if the plaintiff was entitled to any recovery, the amount awarded was not excessive.

We have examined the many exceptions taken to rulings upon evidence and in the charge, but find no error which would be ground for reversal. We think, therefore, that the judgment and order should be affirmed, with costs. All concur, except LAUGHLIN, J., who dissents.

LAUGHLIN, J. (dissenting). I think, if the plaintiff was mistaken about signing the papers in blank, it must be presumed that he knew their contents. According to his testimony, there being no writing, there was no misrepresentation as to the contents. He merely contends that the papers were signed in blank. That contention, in my judgment, cannot be sustained. It therefore follows that he signed with these papers filled out as they now appear, and, if so, he is chargeable with knowledge, and the settlement was authorized.